Judge Grant and I have enjoyed having Judge Martinez with us this week from the Southern District of Florida. A little colder up here than it is in Miami right now, huh, Judge Martinez? A lot, a lot colder. We appreciate you coming up here to help us decide these cases this week. Thank you. Thank you for having me. And we have three that are scheduled for argument this morning, and the first is Alston v. Swarbrick and Trammell, and Mr. Tuck is here for Alston, Mr. Forsyth for Swarbrick, and Mr. Tuck, you may proceed. Thank you, Judge Wilson, and may it please the court, Andy Tuck on behalf of the appellant Omar Alston. Mr. Alston, this is a Section 1983 false arrest and excessive force case. The district judge below granted summary judgment to the defendants, Deputy Swarbrick, Deputy Trammell, and the Sheriff of Marion County, and Mr. Alston appeals those rulings because he believes that the district judge, the central issue in this case, the district judge took the set of facts as alleged by the officers instead of by Mr. Alston. So the state of events, as Mr. Alston saw it, and as he testified in verified complaints and in his affidavit in response to summary judgment, were that he was the victim of a domestic abuse event. His stepson had threatened him and gone to a neighbor's house and told the neighbors that he was going to kill his stepfather, and the neighbors called the police. The police came, Deputy Trammell and Deputy Swarbrick arrived at the scene and arrested the minor's son for this event. Now Mr. Alston was standing off to the side at the entrance to the subdivision when Deputy Swarbrick approached him in an aggressive manner, asked him what he was doing, and asked him what had happened here, and Mr. Alston said I don't have anything to say at the time. Then under Deputy Swarbrick's own affidavit, he told Mr. Alston to leave the scene, and At that point, there's a dispute. Mr. Alston says he issued one obscenity. He said F you, I don't have to tell you anything, and Deputy Swarbrick, on the other hand, said he started going through a list of obscenities, a string of obscenities, but everyone knows what happens after that, and that is that Deputy Swarbrick ran from behind and tackled Mr. Alston. When he did that, it seems clear that the law seems clear that mere words directed at an officer, even if the words include profanity, are not enough to support probable cause for disorderly conduct. But there was an affidavit by the officer in this case that sort of distinguishes this case from our precedent. The officer says that those words caused onlookers to run towards him, and when you add that fact to the facts that you just articulated, that would be sufficient at the very least to justify an arrest for disorderly conduct. What do you have to say about that? I have two points in response to that, Judge Wilson. The first is Mr. Alston says that Deputy Trammell and the onlookers were over by the squad cars. They did not charge at that situation. And the government, in its brief, says that, in its incitement argument, says that the incitement that they're looking at is the later event over by the squad cars when the younger minor son charged at Officer Swarbrick. That was long after this initial arrest. Swarbrick doesn't say that he tackled him because he was causing a disturbance? That is what the officer says. Mr. Alston says he lost his temper and there was no onlooker charge. Okay, but the district judge says there wasn't enough evidence in this record to refute what was in Swarbrick's affidavit. And I would submit that that is just one instance in a repeated series of instances where the district judge actually took the officer's word over Mr. Alston's. The big picture is Mr. Alston says he made Deputy Swarbrick angry, and that's why Deputy Swarbrick attacked. Deputy Swarbrick says he saw these onlookers and he felt danger, and that's why he tackled Mr. Alston. But the bottom line is, and let me get to my second point on this. Actually, before you go on, I have one final question about that issue. Let's assume that we agree with you that there was no probable cause for arrest. At that point, what standard do we use to determine whether the tackle was too much? Because it's my understanding that if there had been probable cause, that may not have been excessive force. Do you disagree with that contention? So if there was no probable cause, then any use of force would be a constitutional violation. So the tackle would clearly be out. If there was probable cause, Mr. Alston still contends that a tackle was excessive when he's merely walking away and all the officer had to do was come grab him and handcuff him. So you would apply the Graham v. Counterfactors in that situation and say, well, he had the authority to arrest, but this court's precedents go both ways. Some force is, of course, required, and there are instances that the government cites, that Marion County cites and the Sheriff cites that, you know, there is some allowable force here, but it's an analysis under the Graham v. Counterfactors. Here, the first Graham v. Counterfactors, this is such a minor crime that tackling him from behind should not be justified. It's like the honking horn in Miami in the, that was in the Ferraro case. So in any event, the second point I want to make about this initial arrest is to point  me, and this was the first case where this court dealt with this Florida disorderly conduct statute. And the court walked through the statute and noted that, you know, since the 70s, the Florida Supreme Court has said to save this disorderly conduct statute from constitutional scrutiny, we can't apply it to anything but Chaplinsky standard fighting words, things that are so excessive that they incite an immediate breach of the peace, not just a crowd of onlookers together, and, or they're like fire in a crowded theater, a false statement of some clear and present danger. And in limiting it that way, since the 70s, Officer Swarbrick was clearly on notice that this kind of behavior didn't give rise to a false arrest, and if he wasn't, Gold itself gave him that notice, because in Gold, a similar situation, profanity at an officer, not even walking away, but profanity directed at an officer in a crowd of onlookers. And in that case, this court said, we're going to give this officer probable, or arguable probable cause qualified immunity. But then later in the opinion, it says, but it is clear that there was no probable cause to arrest Mr. Gold. So in that case, it sets the standard for what going forward should be found to be a clearly established constitutional violation, and this case meets exactly what the facts were in Gold. Let's move to the car incident before, so you don't run out of time. Does your client deny threatening to urinate on the officer? So what he, what Mr. Alston's testimony is, is that there was a verbal exchange. So he has not denied explicitly that he threatened to urinate on the officer, but Mr. Alston's version of the facts, his hands were handcuffed behind his back the entire time. So there's no way to make good on that threat. Under the officer's version of events. I don't want to really get into it, but. Exactly why this case needs to go to a jury for fact finding, Your Honor. So Swarbrick was in the front of the car? The key to the car incident is that Mr. Alston says there were actually two incidents. The first was, they pulled him out and searched him and exposed him to his neighbors, and the points I'll make there are, the officer said, well, we didn't know he wasn't wearing boxers. Well, it's an eggshell plaintiff rule. You take the plaintiff as you find him. If you cause him embarrassment and emotional distress with an illegal search, it's just because that's the way you found him. And Judge Marcus in the Slicker case does a great job of laying out all the different kinds of damages that a party's entitled to. And emotional distress and embarrassment are one of those categories of damages. So he is entitled to that. But the big issue here is the pepper spray. Did they even need to pull him out of the car? No. He didn't need to go out of the car a second time. The exchange that Mr. Alston says happened is they had this verbal exchange, a sparring match. Again, Officer Swarbrick lost his temper. Again, this is a long time after the first arrest. Yes, sure. But to go back to the urinate incident, my understanding of the record is Swarbrick didn't pull him out of the car because he threatened to urinate on him. He pulled him out of the car because he said he had his hands handcuffed behind his back and he somehow got him in front and he started—he made a telephone call to his aunt in Maryland. And Judge Hodges says that's incomprehensible and inconceivable that you could make a telephone call while you're handcuffed. What do you have to say about that? So that's another one of these instances where that is absolutely a jury question. Whether Mr. Alston can make a phone call with his hands behind his back using his cell phone, he can testify to that. A jury doesn't have to believe him, but he certainly could do that and he's testified that he did that. The officers don't talk about the phone call at all. Only Mr. Alston talks about the phone call. What Mr. Alston says is, I had my hands behind my back, I was making a phone call, I was removed the first time by Deputy Trammell, who is not accused of any of the excessive force, he's only accused of bystander liability, and he just searched me and took my cell phone and my keys. Then he has the argument with Swarbrick. That's the second time that Swarbrick comes around after that argument in the car. And then Swarbrick comes around and tries to yank him out, using force to yank him out, using pepper spray in his face when his foot stuck, and then using pepper spray again after he's been removed from the car. And in case after case, this court has said that using this force, using force against someone who is no threat, who is already secured, it is a constitutional violation. And certainly using pepper spray, just like in the Vineyard case, would constitute such excessive force. So, the quote that I would point the court to on this excessive force being clearly established is in Hadley v. Gutierrez in 2008, and this court said, we hold that a handcuffed, non-resisting defendant's right to be free from excessive force was clearly established in February 2002. And I'll note that the Hadley court doesn't say handcuffed behind his back. It says a handcuffed, non-resisting defendant, which is exactly what Mr. Alston was under his version of events. What about the allegation which has shifted that pepper spray was used for three to five minutes? Do you, it's not, I wouldn't think that that would be a continuous spray for three to five minutes. What's the nature of that allegation, really? You've quoted the allegation exactly, and that's what we have at this point. If Mr. Alston were deposed, the counsel could work through whether that meant bursts or three to five minutes of continuous spray or how that exactly played out. But they didn't depose Mr. Alston, so all we have is his statement and his affidavit. But again, that's even after he's been pulled from the car, after he's been pepper sprayed in the face and the back of the car, just like in Vineyard. So that's an even further constitutional violation. Very quickly, I'd like to point out that the defendants asked this court to affirm the sheriff's liability. All Judge Hodges did below, and by the way, I'll point out that Judge Hodges didn't have the benefit of counsel for Mr. Alston. Mr. Alston's been pro se until this proceeding. Judge Hodges said, I don't need to rule on bystander liability for Deputy Trammell. I don't need to rule on supervisory liability under Monell for the sheriff's office because there's no constitutional violation here. So in the event this court reverses on these constitutional violations, it should also send those issues back to be determined by the district judge in the first instance. And I'll just point out that there is a current case going on. It's going to trial against Marion County for supervisory liability in the Middle District of Florida in the Derek Price case. And that case is at 5-17-CV-4-23 in the Middle District of Florida. So this is not an isolated incident. Marion County has had multiple incidents of problems like this, and so supervisory liability should still be on the table as it goes back to the district court if this court should reverse. Thank you very much. Thank you, Mr. Tuck. We'll hear from Mr. Forsyth. Good morning. May it please the court. Good morning. Ian Forsyth here for the appellees, the deputies, as well as the sheriff of Marion County. Your Honors, it is our position that Judge Hodges correctly granted summary judgment in this case on the grounds of the false arrest claim and on the excessive force claim. This is a case where Mr. Alston was arrested for, as you know, disorderly conduct. When the deputies arrived at the scene, this was a call on a suspicious case of domestic violence or domestic battery. Isn't there a dispute, though, now about whether or not Alston's words caused onlookers to charge Officer Swarbrick? And if there's a dispute about that, then this case ought to go to a jury. Your Honor, I would respectfully submit that there is no dispute about that. I think there's a theme in this case of— Alston says it didn't happen. It says that the, I think it's Tamika Morris and her other minor son approached Swarbrick long after Swarbrick tackled Alston. So, they didn't cause Swarbrick to tackle Alston. There was no disturbance sufficient to support an arrest for disorderly conduct, if that's the case. Now, that might not very well be the case, but if we have a dispute in the record, that's a genuine issue of fact. That falls within the province of the jury, doesn't it? Well, Your Honor, I would respectfully state that that is not what the record says. I believe that what happened—in this case, there's a theme of the officers or the deputies state certain things happened. The plaintiff doesn't refute that those specific things happened, but states other things. For example, the plaintiff says— You can do that on summary judgment, can't you? I'm sorry, Your Honor? That's what summary judgment is all about. The plaintiff has an opportunity to refute what the officer says in his affidavit. And if there's a dispute about that, then it goes to the jury. The issue goes to the jury, doesn't it? Yes, Your Honor, but the plaintiff in this case did not dispute that specific allegation. For example, the plaintiff said that there were onlookers present when the deputies arrived. Okay, we accept that as true, but that does not refute the specific statement of the deputies that says when Mr. Alston started spewing his profanities, that incited some of the onlookers to advance towards him. The plaintiff never specifically said that didn't happen. And that's a theme throughout this case. For example— I've got a question. Even if you take what the plaintiff says that he says, which is, F you, I don't have to answer anything. Even if for some reason that incited—those words incited onlookers to start resisting, wouldn't you at that point have probable cause to arrest the onlookers rather than the person who used, I think, plainly protected speech? Well, respectfully, Your Honor, I think that's a false dichotomy. You could have probable cause to do both and choose one over the other or one not the other. One doesn't refute the other as being true. That would be my response to that. Wouldn't a jury, though, need to determine in any event which one was true? Well, again, I think that's a false dichotomy. They both could be true or they both could be false or one could be true and one could be false. The fact that it may be true that he had probable cause to arrest the onlookers for obstruction doesn't mean he didn't have probable cause to arrest Mr. Alston. They could be both true or both not true or one or the other. Let's move on to the incidents in the car. What is your client's story about why there are no facts in dispute as to what happened in the car? Again, going back to the theme I referenced with Justice Wilson, the deputy's specific— I'll give you a specific example. Judge Wilson. I'm sorry? You said Justice Wilson. I'm sorry. My apology. The deputy specifically stated that Mr. Alston, when he was in the back seat, took the handcuffs from behind and moved them somehow around to the front. And Mr. Alston says he didn't. No, he doesn't. Mr. Alston, to be clear, I read his statements very carefully. What he says was, I made a phone call while my handcuffs were behind me. He never said, quote, I never moved my handcuffs to the front. He's very—I wouldn't use the word careful, but the record doesn't refute the specific statement that he moved his handcuffs to the front. Okay, so let's suppose that an arrestee is in the car with their hands handcuffed in the front. What level of force is constitutionally acceptable in that situation? I think it is constitutionally acceptable for the deputy to then remove him from the vehicle, to re-handcuff him to make him then secure again, which is what the deputy attempted to do. And during that process, he resisted and escalated the resistance. And what if the defendant is handcuffed behind his back? Well, then I think you have to look at the totality of the circumstances under Graham. I mean, for example, in this case, there was an allegation that he attempted to urinate or stated he would urinate on the deputies. And that could be a potential issue they need to take action to make sure that doesn't happen because that's a battery. How would he urinate on the deputies if he's locked in the back of a police car? By moving his hands from the back to the front, and then once his hands are in front, he could move his pants down and do something of that nature. Couldn't they just not get in the back seat with him and escape that danger? Sure, that's possible. But I think under Graham v. Conner, the Supreme Court admonishes us not to second-guess or sit in the comfort of our chambers and second-guess what officers do. Sure, they could take different—I agree, officers can do different things at different times under different circumstances. But the question is whether the thing that they actually did was constitutionally permissible. So is your position that any time an arrestee who is handcuffed and secured in the back of a police car threatens to urinate, the police officers may use whatever force is required to remove that person from the car? No, I wouldn't go that far. What I would say under the facts of this case, based upon what happened here with him moving his handcuffs to the front and acting the way he did under the totality of circumstances, that it was constitutionally permissible. But your position depends on our concluding that there is not a factual dispute about whether his handcuffs were behind him or in front of him. Is that right? No, I would say two things. Well, first, I would say there is no factual dispute on that because the plaintiff doesn't specifically refute it. So I would say there's no factual dispute. He does say that he somehow in his—first of all, when he initially filed— The District Court seemed to assume in its decision that the hands were in front when the phone call was made, and that was evidence that the hands were in the front. He says there was a physical impossibility to make a call with his hands behind his back. So therefore, they must have been in front. The District Court seems to have credited— I must have—I'm sorry, Your Honor. I mean, I must have interpreted that differently. I thought the District Court assumed they were handcuffed in the back when he made the phone call. No, that's not what the District Court said. The District Court says it's inconceivable and incomprehensible—those are his words— that you could make a telephone call, as Alston says he did, handcuffed with your hands behind your back, and credited the officer's testimony that his hands were not behind his back when he made the telephone call. He got his hands—he somehow got his hands in the front, and the District Court credited the officer's version over Mr. Alston's version. So we have a dispute about the facts, don't we? Your Honor, I respectfully say no because Mr. Alston never said— and he said it—the District Court said this was important. This is an important fact in my calculus. I agree that, first of all, Mr. Alston didn't reference this in his first complaint, I think, or in his second complaint. I think it was a third amended complaint where he first brought up this phone issue, and it wasn't mentioned in the officer's reports either initially because— But we're analyzing the third amended complaint, correct? Understood, Your Honor. With respect to the third amended complaint, it is my recollection that Mr. Alston, he does say in his third amended complaint that he made a phone call by retrieving his cell phone. He used the word retrieve, but he does not dispute, and I believe he says so while his hands were behind his back, but the point is he does not dispute that he moved his handcuffs from behind him to the front of him. The District Court says in the affidavit attached to his response, however, plaintiff contends that contrary to the officer's version, his hands remain restrained from behind. Right, that's my recollection. So my understanding is the District Court assumed his hands were restrained from behind when he made this alleged phone call. The court finds that the modified version in the response is inconceivable. Right, that was my recollection. The District Court found it inconceivable that he could be handcuffed behind his back, sitting in a patrol car, and somehow retrieve his phone to make a phone call. I have it on good authority that you can make a telephone call with a cell phone behind your back. While handcuffed behind your back? Yes. Do we know what kind of cell phone it was? Not off the top of my head, but this was 2011, bearing that in mind. This is 2019 now. I found it surprising that you could even get your handcuffed hands behind your back in front. I'm assured by knowledgeable people that that is possible. I don't see how that's any more possible than making a phone call with your hands behind your back. It is, because you can scrunch your feet down like this and go like this. I asked my law clerk if she could do it, and she did it. She made a telephone call with her cell phone behind her back. Was she handcuffed? Was she sitting down in a patrol car handcuffed? Well, I mean, it's not inconceivable and incomprehensible if you can make a cell phone call with your cell phone behind your back and your hands behind your back. I wouldn't say that it's inconceivable that you could do it if you had handcuffs on. And it seems to me that would be arguments that ought to be made to a jury. Was she using a telephone from 2011? They're not that much different. That's only two versions ago. That's not so bad. So why shouldn't the jury be able to listen to those arguments and listen to that evidence and credit one, the officer's testimony over that of Mr. Alston? Because, yes, anyone can allege anything and theoretically say that happened, but there reaches a point where under the precedent of this court, things become factually incredible and not possible. And once you pass that point, then you shouldn't have to credit anything anyone says. And I think this passes that point. If there are no other questions, I will reserve the balance of my time. All right. Thank you, Mr. Forsythe. Thank you. Mr. Tuck, you've reserved some time for rebuttal. Thank you, Judge Wilson. First of all, thank you for winning a bet for me. I had a bet with some of my colleagues that there were law clerks in the various chambers trying to go through these shenanigans. With regard to the onlookers in the first arrest, I'll just make two points very quickly. Mr. Alston's statements do refute that onlookers charged. He says that they were over by the deputies' cars, not around. And in any event, even if onlookers came to gather because he was saying, there would have been more of a disturbance if he had been yelling, vote Trump, than if he had been yelling obscenities at the officer. And there's no question there wouldn't be probable cause to arrest him then. With regard to the handcuffs in the front, I will just point the court to his affidavit where he does refute this. It's at docket 153, paragraphs 13 and 14. And then again in paragraph 18, he talks about the handcuffs. So unless there are no questions, I'll leave it at that. All right. Thank you, counsel. Thank you. Let's go.